IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

**FILED**

NOV - 8 2006

ROBERT D. DENNIS
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

UNITED STATES OF AMERICA,  )
                                )
          Plaintiff,  )
                                )
     -vs-  )   No. **CR 06-264 HE**
                                )
BRANDON L. BAUM,  )
GAYLE L. CALDWELL,  )   <u>**Violations:**</u>
JOSEPH CONRAD THERRIEN,  )   18 U.S.C. § 1343
CHARLES E. CALDWELL, JR.,  )   18 U.S.C. § 2(b)
TERESA M. THERRIEN,  )   18 U.S.C. § 1957
RUSTY REAL THERRIEN and,  )   18 U.S.C. § 1956(a)(1)(B)(i)
TIMOTHY J. McDANIEL,  )
                                )
         Defendants.  )

# I N D I C T M E N T

The Federal Grand Jury charges:

## Introduction

At all times relevant to this Indictment:

1.   Each of the defendants resided in the Western District of Oklahoma.

2.   **BRANDON L. BAUM** was a real estate agent, and acted as the buyers' agent in the purchases of certain properties in Oak Tree Subdivision, Edmond, Oklahoma. He also controlled a business entity known as "Secorum Investments, LLC" (hereafter "Secorum").

3.   **GAYLE L. CALDWELL** owned a business known as "Access Marketing Services, Inc." located in Edmond, Oklahoma.

4. **CHARLES E. CALDWELL, JR.,** the husband of **GAYLE CALDWELL**, was employed as a mortgage broker with United Lending, a business located in Oklahoma City, Oklahoma. He received commissions directly from United Lending.

5. **JOSEPH CONRAD THERRIEN** was the purchaser of a home located at 1000 Irvine Drive, Edmond, Oklahoma, and was represented by **BAUM** in the transaction. In addition, he was involved with the purchase of 5916 Morning Dove Lane, Edmond, Oklahoma.

6. **TERESA M. THERRIEN** was the purchaser of a home located at 5813 Dundee Terrace, Edmond, Oklahoma, and was represented by **BAUM**. Her husband, **RUSTY REAL THERRIEN**, was involved in that purchase, as well as with the purchases of homes at 6125 Stonegate and 1208 Troone Drive, both located in Edmond, Oklahoma.

7. **TIMOTHY J. McDANIEL** was the purchaser of two homes, one at 6125 Stonegate and one at 1208 Troone Drive, both located in Edmond, Oklahoma. He was represented by **BAUM** in both transactions.

8. D.J.A. was the purchaser of a home located at 5916 Morning Dove Lane in Edmond, Oklahoma, and was represented by **BAUM**.

9. F.B. was the purchaser of a home located at 1709 Irvine Drive in Edmond, Oklahoma, and was represented by **BAUM**.

10. Argent Mortgage ("Argent") was a corporation located in Orange, California, engaged in the business of funding mortgages. It was the lender in the sales of 1000 Irvine Drive to

- 2 -

**JOSEPH THERRIEN**, 5916 Morning Dove Lane to D.J.A., 5813 Dundee Terrace to **TERESA THERRIEN**, and 1208 Troone Drive to **McDANIEL**.

11. NovaStar Mortgage ("NovaStar") was a corporation located in Lake Forest, California, engaged in the business of funding mortgages. NovaStar had a bank account in New York, New York. It was the lender in the sale of 6125 Stonegate Place to **McDANIEL**.

12. Long Beach Mortgage ("Long Beach") was a corporation located in Anaheim, California, engaged in the business of funding mortgages. It was the lender in the sale of 1709 Irvine Drive to F.B.

13. Lawyers' Title Company ("Lawyers' Title") was a company used for closing real estate transactions.

14. Oklahoma City Abstract & Title Company ("Oklahoma City Abstract") was a company used for closing real estate transactions.

15. First American Title Company ("First American Title") was a company used for closing real estate transactions.

16. Bank of Oklahoma ("BOK") was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC") where the proceeds of mortgage loans for 5916 Morning Dove Lane, 1000 Irvine Drive, 6125 Stonegate Place, and 1208 Troone Drive were sent.

17. Stillwater National Bank ("SNB") was a financial institution the deposits of which were insured by the FDIC where the proceeds of mortgage loans for 5813 Dundee Terrace and 1709 Irvine Drive were sent.

18. Bank of America ("BOA") was a financial institution the deposits of which were insured by the FDIC.

19. Arvest Bank ("Arvest") was a financial institution the deposits of which were insured by the FDIC.

20. BancFirst was a financial institution the deposits of which were insured by the FDIC.

## Background

21. Defendants were engaged in schemes to defraud various mortgage lenders by artificially inflating the sales prices of homes and submitting false loan applications. Each of the defendants intended to personally profit by funneling substantial sums of money back to themselves and others from the excess sales proceeds under the guise of remodeling, repair costs or marketing service fees.

22. Potential home buyers represented by **BAUM** were told they could receive substantial funds at the time of closing under the guise of "repair costs," which they could use for their personal benefit, if they agreed to purchase the homes at an

- 4 -

inflated price.   Sellers' agents for certain hard-to-sell proper-
ties in Oak Tree Subdivision negotiated sales with **BAUM**.

23.   Brokers at United Lending, including **CHARLES E.
CALDWELL, JR.**, facilitated the submission of fraudulent loan
applications to lenders for buyers who could not qualify to
purchase the homes at the artificially inflated prices.   Buyers
would provide false information on their loan applications
concerning their actual income and assets.

24.   In some cases,  **BAUM, CHARLES E. CALDWELL, JR.,
JOSEPH THERRIEN, RUSTY THERRIEN**  and/or others would provide
temporary loans to buyers represented by **BAUM** for down payments
with the understanding they would be reimbursed at closing from the
purported remodeling or repair costs, marketing service fees, and
other undisclosed disbursements.   In those cases, the buyers would
not disclose these down payment loans to the lenders, but would
instead falsely represent the sources of their down payments.

25.   Mortgages were approved by lenders based on false
statements and fraudulent representations contained in the loan
applications.

26.   **BAUM** would present contracts to the sellers' real
estate agents in which buyers agreed to purchase homes at prices
well above the properties' original Multilist Service ("MLS") list
prices.   Sellers' agents would present the purchase contracts for
the inflated prices to their clients and obtain agreements from the

- 5 -

sellers to pay for purported remodeling, repair costs, marketing service fees, and closing costs from the inflated sales proceeds to facilitate the sales of their homes.

27. Once the terms of a purchase had been approved by both the buyer and seller, in many cases sellers' agents would increase the MLS list price for the properties to an amount equal to or above the agreed inflated purchase price to avoid detection by the lenders and others.

28. Prior to the closing of each property, loan proceeds were wire-transferred from lenders on behalf of the buyers to the bank accounts of closing companies in Oklahoma. At closing, the title companies were directed by **BAUM**, sellers' agents, and the sellers to issue checks from the sales proceeds to various entities for purported remodeling, repair costs, marketing service fees, or other fees.

29. T.C.M. was an associate of **BAUM** who controlled bank accounts that **BAUM** used for funneling money back to certain defendants, buyers, and others after closing. T.C.M. would deposit title company checks given to him by **BAUM** that were issued from the sales proceeds to various entities for purported remodeling, repair costs, marketing service fees, and other fees. **BAUM** would then direct T.C.M. to issue checks from those accounts or purchase cashier's checks payable to the buyers, to those who may have loaned down payment funds, and to others. In one case, **BAUM** used

- 6 -

his own entity, Secorum, to funnel purported remodeling and repair costs back to the buyer.

30.   **BAUM, CHARLES E. CALDWELL, JR.**, sellers' agents, and others received commissions from the sales of the homes at the time of closing.

## COUNT 1

### Wire Fraud;
### Aiding and Abetting
**(18 U.S.C. § 1343;
18 U.S.C. § 2(b))**

### THE SCHEME TO DEFRAUD

31.   The Federal Grand Jury incorporates by reference paragraphs 1, 2, 4, 5, 8, 10, 13, 16, and 20 through 30 of the Indictment.

32.   From in or about early 2003, and continuing through on or about October 16, 2003, **BRANDON L. BAUM, JOSEPH CONRAD THERRIEN, CHARLES E. CALDWELL, JR.**, and others devised and intended to devise a scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises.  The purpose of the scheme was to assist **JOSEPH THERRIEN** in purchasing the property at 1000 Irvine Drive, Oak Tree Subdivision, Edmond, Oklahoma, at a fraudulently inflated value through false representations to Argent concerning **JOSEPH THERRIEN**'s financial ability to qualify.  **BAUM,**

JOSEPH THERRIEN, CHARLES E. CALDWELL, JR., D.J.A., and others intended to personally profit from the purchase.

It was part of the scheme that:

33. In early 2003, **BAUM** met with **JOSEPH THERRIEN**, D.J.A., and T.C.M. to discuss how purported repair money could be funneled back to a buyer through a fictitious entity in the purchase of a home;

34. On or about September 4, 2003, **BAUM** submitted a purchase contract on behalf of **JOSEPH THERRIEN** to the sellers' agent for 1000 Irvine Drive in the amount of $405,000.00, which was $65,500.00 above the MLS list price. On that date, the sellers' agent increased the MLS list price to $407,000.00;

35. On or about September 5, 2003, **JOSEPH THERRIEN**, with the assistance of **CHARLES E. CALDWELL, JR.**, completed and thereafter submitted a false Uniform Residential Loan Application for a mortgage in the amount of $384,750.00 to Argent that contained false information concerning **JOSEPH THERRIEN**'s income, bank balance, and source of down payment, which loan was subsequently approved;

36. On or about September 10, 2003, the sellers accepted an addendum to the purchase contract prepared by **BAUM** on behalf of **JOSEPH THERRIEN** in which the sellers agreed to pay $60,000.00 for purported remodeling;

37.   On or about October 10, 2003, **JOSEPH THERRIEN** used a $20,250.00 BancFirst cashier's check payable to Lawyers' Title for the down payment, purchased with funds loaned to him by **CHARLES E. CALDWELL, JR.**, **BAUM**, and T.C.M.;

38.   After the closing, on or about October 14, 2003, **BAUM** received a real estate commission of approximately $10,050.00 from the sale proceeds, the sellers' agent received a commission of approximately $6,700.00, and United Lending received a commission of approximately $15,890.00. **CHARLES E. CALDWELL, JR.** personally received a commission in the amount of $7,502.63 from United Lending;

39.   On or about October 14, 2003, **BAUM** gave T.C.M. a $60,000.00 Lawyers' Title check payable to "Alliance Construction" for purported repairs and directed him to deposit the check into his bank account; and

40.   On or about October 16, 2003, T.C.M., at the direction of **BAUM**, purchased a $38,750.00 cashier's check payable to D.J.A. The remainder of the $60,000.00 went to **BAUM, CHARLES E. CALDWELL, JR.**, and T.C.M. to repay the down payment loans.

41.   On about October 14, 2003, in the Western District of Oklahoma,

----------------------   **BRANDON L. BAUM,**
                         **JOSEPH CONRAD THERRIEN, and**
                         **CHARLES E. CALDWELL, JR.,**   --------------

the defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted the following interstate wire communication: a wire transfer of funds totaling $390,448.16 from Argent in California to Lawyers' Title in Oklahoma.

All in violation of Title 18, United States Code, Section 1343; and Title 18, United States Code, Section 2(b).

## COUNT 2

### Engaging in a Monetary Transaction
### in Criminally Derived Property;
### Aiding and Abetting
(18 U.S.C. § 1957;
18 U.S.C. § 2(b))

42. On or about October 16, 2003, in the Western District of Oklahoma and elsewhere,

---------------------- **BRANDON L. BAUM, and**
          **JOSEPH CONRAD THERRIEN,** ------------------

the defendants herein, knowingly engaged in and caused to be engaged in, a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000,00, that is, the deposit of Cashier's Check No. 070549673 from Commercial Federal in the

amount of $38,750.00 payable to D.J.A. into Account No. xxxxxx1708 at BancFirst, such property having been derived from a specified unlawful activity, that is, wire fraud as described in Count 1, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957; and Title 18, United States Code, Section 2(b).

## COUNT 3

### Wire Fraud;
### Aiding and Abetting
### (18 U.S.C. § 1343;
### 18 U.S.C. § 2(b))

### THE SCHEME TO DEFRAUD

43. The Federal Grand Jury incorporates by reference paragraphs 1, 2, 4, 5, 8, 10, 13, 16, 18, 21 through 30, and 33 of the Indictment.

44. From in or about early 2003, and continuing through on or about November 6, 2003, **BRANDON L. BAUM, CHARLES E. CALDWELL, JR., JOSEPH CONRAD THERRIEN**, and others devised and intended to devise a scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises. The purpose of the scheme was to assist D.J.A. in purchasing the property at 5916 Morning Dove Lane, Oak Tree Subdivision, Edmond, Oklahoma, at a fraudulently inflated value through false representations to Argent

concerning D.J.A.'s financial ability to qualify. **BAUM, CHARLES E. CALDWELL, JR.,** and others intended to personally profit from the sale.

It was part of the scheme that:

45. On or about September 5, 2003, D.J.A., with the assistance of **CHARLES E. CALDWELL, JR.**, completed and thereafter submitted a false Uniform Residential Loan Application for a mortgage in the amount of $294,500.00 to Argent that contained false information concerning D.J.A.'s income, bank balance, and source of down payment, which loan was subsequently approved;

46. On or about September 15, 2003, **BAUM** submitted a purchase contract on behalf of D.J.A. to the sellers' agent for 5916 Morning Dove Lane in the amount of $310,000.00, which was $75,000.00 above the MLS list price;

47. On or about September 17, 2003, the sellers accepted an addendum to the purchase contract prepared by **BAUM** on behalf of D.J.A. in which the sellers agreed to pay $77,500.00 for purported remodeling;

48. On or about September 24, 2003, the sellers' agent caused the MLS list price to be increased from $235,000.00 to $315,000.00;

49. On or about September 30, 2003, **CHARLES E. CALDWELL, JR., JOSEPH THERRIEN,** and D.J.A. signed a false Request for Verification of Rent as part of D.J.A.'s loan application to

Argent, stating D.J.A. was renting 1301 Oak Tree Drive from **JOSEPH THERRIEN**;

50.  On or about October 15, 2003, D.J.A. purchased a $15,500.00 cashier's check payable to Lawyers' Title for the down payment with funds provided by T.C.M. at the direction of **BAUM**;

51.  After the closing, on or about October 22, 2003, **BAUM** and the sellers' agent received real estate commissions of approximately $6,675.00 each and United Lending received a commission of approximately $9,820.00.  **CHARLES E. CALDWELL, JR.** personally received a commission in the amount of $5,742.75 from United Lending;

52.  On or about October 23, 2003, **BAUM** gave T.C.M. a $77,500.00 check payable to "Alliance Construction" issued by Lawyers' Title from the sales proceeds for purported repairs, which T.C.M. deposited into his bank account.  **BAUM** and T.C.M. retained $19,750.00 of this deposit to recoup the down payment funds described in paragraph 50 and to derive additional profit;

53.  On or about October 23, 2003, **BAUM** directed T.C.M. to purchase a $10,250.00 cashier's check payable to **BAUM** from the deposit described in paragraph 52; and

54.  On or about October 24, 2003, T.C.M., at the direction of **BAUM**, purchased a $57,750.00 cashier's check payable to D.J.A.

55.  On about October 22, 2003, in the Western District of Oklahoma,

---------------------- **BRANDON L. BAUM,**
                       **JOSEPH CONRAD THERRIEN, and**
                       **CHARLES E. CALDWELL, JR.,** --------------

the defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted the following interstate wire communication:  a wire transfer of funds totaling $299,306.20 from Argent in California to Lawyers' Title in Oklahoma.

All in violation of Title 18, United States Code, Section 1343; and Title 18, United States Code, Section 2(b).

### COUNT 4

**Engaging in a Monetary Transaction
in Criminally Derived Property;
Aiding and Abetting
(18 U.S.C. § 1957;
18 U.S.C. § 2(b))**

56.  On or about October 23, 2003, in the Western District of Oklahoma and elsewhere,

---------------------- **BRANDON L. BAUM,** ------------------------

the defendant herein, knowingly engaged in and caused to be engaged in, a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000,00, that is, the deposit of Cashier's Check No. 070414467 from Commercial Federal in the amount of $10,250.00 payable to **BAUM** into Account No. xxxxxxxx2000 at BOA, such property having been derived from a specified unlawful activity, that is, wire fraud as described in Count 3, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957; and Title 18, United States Code, Section 2(b).

## COUNT 5

### Wire Fraud;
### Aiding and Abetting
### (18 U.S.C. § 1343;
### 18 U.S.C. § 2(b))

### THE SCHEME TO DEFRAUD

57.   The Federal Grand Jury incorporates by reference paragraphs 1, 2, 6, 8, 10, 14, 17, 19, and 21 through 30 of the Indictment.

58.   From in or about October 2003, and continuing through on or about November 26, 2003, **BRANDON L. BAUM, TERESA M. THERRIEN, RUSTY REAL THERRIEN**, and others devised and intended to devise a scheme and artifice to materially defraud and for

obtaining money by means of materially false and fraudulent pretenses, representations, and promises. The purpose of the scheme was to assist **TERESA THERRIEN** in purchasing the property at 5813 Dundee Terrace in Oak Tree Subdivision, Edmond, Oklahoma, at a fraudulently inflated value through false representations to Argent concerning **TERESA THERRIEN**'s financial ability to qualify. **BAUM, TERESA THERRIEN, RUSTY THERRIEN,** and others intended to personally profit from the sale.

It was part of the scheme that:

59. On or about October 21, 2003, **BAUM** submitted a purchase contract on behalf of **TERESA THERRIEN** to the sellers' agent for 5813 Dundee Terrace in the amount of $380,000.00, which was $81,000.00 above the MLS list price;

60. On or about October 23, 2003, the sellers' agent caused the MLS list price for the property to be increased from $299,000.00 to $385,000.00;

61. On or about October 24, 2003, the sellers accepted an addendum to the purchase contract prepared by **BAUM** on behalf of **TERESA THERRIEN** in which the sellers agreed to pay $91,000.00 for purported remodeling;

62. On or about November 5, 2003, **TERESA THERRIEN**, with the assistance of a broker at United Lending, completed and thereafter submitted a false Uniform Residential Loan Application for a mortgage in the amount of $342,000.00 to Argent that

contained false information concerning her income, bank balance, and source of down payment, which loan was subsequently approved;

63. On or about November 5, 2003, T.C.M. signed a Request for Verification of Rent provided by **BAUM** as part of **TERESA THERRIEN**'s loan application to Argent, falsely stating that he was the Property Manager for her current residence;

64. Between approximately November 12 and November 14, 2003, T.C.M. at the direction of **BAUM** provided $20,000.00 and D.J.A. provided $17,994.00 to **RUSTY THERRIEN** to be used for **TERESA THERRIEN'S** down payment;

65. After the closing, on or about November 24, 2003, **BAUM** and the sellers' agent received real estate commissions of approximately $8,370.00 each and United Lending received a commission of approximately $12,579.78;

66. On or about November 24, 2003, **BAUM** gave T.C.M. a $91,000.00 Oklahoma City Abstract check payable to "Allied Construction" for purported repairs, which T.C.M. deposited into his bank account; and

67. On or about November 24, 2003, T.C.M., at the direction of **BAUM**, used the proceeds of the deposit described in paragraph 66 to issue an $18,000.00 check payable to D.J.A. as reimbursement for the down payment and a $51,000.00 check payable to **RUSTY THERRIEN**. **BAUM** and T.C.M. retained the remaining

$22,000.00 to recoup their $20,000.00 down payment loan and to derive additional profit.

68.   On about November 21, 2003, in the Western District of Oklahoma,

----------------------- **BRANDON L. BAUM,**
                        **TERESA M. THERRIEN, and**
                        **RUSTY REAL THERRIEN,** -------------------

the defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted the following interstate wire communication:  a wire transfer of funds totaling $347,679.30 from Argent in California to Oklahoma City Abstract in Oklahoma.

All in violation of Title 18, United States Code, Section 1343; and Title 18, United States Code, Section 2(b).

### COUNT 6

**Engaging in a Monetary Transaction**
**in Criminally Derived Property;**
**Aiding and Abetting**
**(18 U.S.C. § 1957;**
**18 U.S.C. § 2(b))**

69.   On or about November 26, 2003, in the Western District of Oklahoma and elsewhere,

------------------------- **BRANDON L. BAUM,**
**TERESA M. THERRIEN, and**
**RUSTY REAL THERRIEN,** -------------------

the defendants herein, knowingly engaged in and caused to be engaged in, a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000,00, that is, the deposit of Check No. 16069 drawn on Account No. xxxxxx6040 at Commercial Federal in the amount of $51,000.00 payable to **"RUSTY THERRIEN"** into the joint account of **RUSTY** and **TERESA THERRIEN,** Account No. xxxx7852 at Arvest, such property having been derived from a specified unlawful activity, that is, wire fraud as described in Count 5, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957; and Title 18, United States Code, Section 2(b).

## COUNT 7

**Wire Fraud;**
**Aiding and Abetting**
**(18 U.S.C. § 1343;**
**18 U.S.C. § 2(b))**

### THE SCHEME TO DEFRAUD

70.  The Federal Grand Jury incorporates by reference paragraphs 1, 2, 6, 7, 11, 13, 16, 19, and 21 through 30 of the Indictment.

71. From in or about fall 2003, and continuing through on or about December 11, 2003, **BRANDON L. BAUM, TIMOTHY J. McDANIEL, RUSTY REAL THERRIEN**, and others devised and intended to devise a scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises.   The purpose of the scheme was to assist **McDANIEL** in purchasing the property at 6125 Stonegate Place in Oak Tree Subdivision, Edmond, Oklahoma, at a fraudulently inflated value through false representations to NovaStar concerning his financial ability to qualify.   **BAUM, McDANIEL**, and others intended to personally profit from the sale.

It was part of the scheme that:

72. In fall 2003, **McDANIEL** had a meeting with **BAUM** in which **BAUM** told **McDANIEL** he would pay him $10,000.00 to purchase 6125 Stonegate and then **BAUM** would sign a lease/purchase agreement with **McDANIEL** to lease the property;

73. On or about November 13, 2003, **McDANIEL**, with the assistance of a broker at United Lending, completed and thereafter submitted a false Uniform Residential Loan Application to NovaStar containing misrepresentations concerning his income, source of down payment, and the intended occupancy of the home by **BAUM**;

74. On or about November 17, 2003, **BAUM** submitted a purchase contract on behalf of **McDANIEL** to the sellers' agent for $380,000.00, which was $100,100.00 above the MLS list price;

75. On or about November 18, 2003, the sellers accepted an addendum to the purchase contract prepared by **BAUM** and presented to them by the sellers' agent in which the sellers agreed to pay "Allied Construction" $100,000.00 after the closing for purported remodeling;

76. On or about December 9, 2003, **RUSTY THERRIEN** gave **McDANIEL** a check for $38,000.00 to use as partial down payment;

77. After the closing, on or about December 10, 2003, **BAUM** and the sellers' agent received real estate commissions of approximately $8,100.00 each and United Lending received a commission of approximately $14,615.00;

78. On or about December 10, 2003, **BAUM** gave T.C.M. a $100,000.00 Lawyers' Title check payable to "Alliance Construction" for purported repairs, which T.C.M. deposited into his bank account; and

79. On or about December 11, 2003, T.C.M., at the direction of **BAUM**, gave **BAUM** a $38,000.00 check payable to **RUSTY THERRIEN** for down payment reimbursement, a $10,000.00 check payable to **McDANIEL**, and a $35,621.78 check payable to **BAUM** from the funds described in paragraph 78.

- 21 -

80.   On about December 10, 2003, in the Western District of Oklahoma,

---------------------- **BRANDON L. BAUM,**
                       **TIMOTHY J. McDANIEL, and**
                       **RUSTY REAL THERRIEN,** ----------------------

the defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted the following interstate wire communication:  a wire transfer of funds totaling $345,001.61 from NovaStar in New York to Lawyers' Title in Oklahoma.

All in violation of Title 18, United States Code, Section 1343; and Title 18, United States Code, Section 2(b).

### COUNT 8

**Engaging in a Monetary Transaction
in Criminally Derived Property;
Aiding and Abetting
(18 U.S.C. § 1957;
18 U.S.C. § 2(b))**

81.   On or about December 11, 2003, in the Western District of Oklahoma and elsewhere,

---------------------- **BRANDON L. BAUM,** ------------------------

the defendant herein, knowingly engaged in and caused to be engaged in, a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000,00, that is, the deposit of Check No. 16075 drawn on Account No. xxxx6040 at Commercial Federal in the amount of $35,621.78 payable to **BAUM** into Account No. xxxxxx4076 at BOK, such property having been derived from a specified unlawful activity, that is, wire fraud as described in Count 7, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957; and Title 18, United States Code, Section 2(b).

## COUNT 9

**Engaging in a Monetary Transaction
in Criminally Derived Property;
Aiding and Abetting
(18 U.S.C. § 1957;
18 U.S.C. § 2(b))**

82. On or about December 15, 2003, in the Western District of Oklahoma and elsewhere,

--------------------   **BRANDON L. BAUM, and
RUSTY REAL THERRIEN,**   ---------------------

the defendants herein, knowingly engaged in and caused to be engaged in, a monetary transaction by, through, or to a financial

institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000,00, that is, the deposit of Check No. 16072 drawn on Account No. xxxx6040 at Commercial Federal in the amount of $38,000.00 payable to **"RUSTY THERRIEN"** into Account No. xxxx7852 at Arvest, such property having been derived from a specified unlawful activity, that is, wire fraud as described in Count 7, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957; and Title 18, United States Code, Section 2(b).

### COUNT 10

**Wire Fraud;**
**Aiding and Abetting**
**(18 U.S.C. § 1343;**
**18 U.S.C. § 2(b))**

### THE SCHEME TO DEFRAUD

83. The Federal Grand Jury incorporates by reference paragraphs 1, 2, 6, 7, 10, 15, 16, 19, and 21 through 30 of the Indictment.

84. From in or about December 2003, and continuing through on or about January 7, 2004, **BRANDON L. BAUM, TIMOTHY J. McDANIEL, RUSTY REAL THERRIEN,** and others devised and intended to devise a scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent

- 24 -

pretenses, representations, and promises.   The purpose of the scheme was to assist **McDANIEL** in purchasing the property at 1208 Troone Drive, Oak Tree Subdivision, Edmond, Oklahoma, at a fraudulently inflated value through false representations to Argent concerning his financial ability to qualify.  **BAUM, McDANIEL, RUSTY THERRIEN,** and others intended to personally profit from the sale.

It was part of the scheme that:

85.   On or about December 19, 2003,   **BAUM** submitted a purchase contract for 1208 Troone Drive on behalf of **McDANIEL** to the seller's agent in the amount of $330,000.00, which was $40,100.00 above the MLS list price;

86.   On or about December 22, 2003, the seller accepted an addendum to the purchase contract prepared by **BAUM** and presented to him by the seller's agent in which the seller agreed to pay $42,000.00 for purported remodeling;

87.   On or about December 22, 2003, **McDANIEL**, with the assistance of a broker at United Lending, submitted a false Uniform Residential Loan Application for a mortgage in the amount of $297,000.00 to Argent that contained false information concerning his income and source of down payment, which loan was subsequently approved;

88.   On or about January 6, 2004,   **BAUM** gave **McDANIEL** three cashier's checks from **BAUM, RUSTY THERRIEN**, and an associate of **BAUM** totaling $36,588.28 for the down payment;

- 25 -

89.   After the closing, on or about January 7, 2004, **BAUM** and the seller's agent received real estate commissions of approximately $8,340.00 each and United Lending received a commission of approximately $15,304.11; and

90.   On or about January 7, 2004, at the direction of **BAUM**, T.C.M. used the proceeds of a $42,000.00 check issued by First American Title to "Allied Const" for purported repairs to issue checks to **BAUM** for $6,500.00, to **McDANIEL** for $3,500.00, to **RUSTY THERRIEN** for $11,000.00, and to **BAUM**'s associate for $21,000.00.

91.   On about January 7, 2004, in the Western District of Oklahoma,

---------------------- **BRANDON L. BAUM,**
                       **RUSTY REAL THERRIEN, and**
                       **TIMOTHY J. McDANIEL,** --------------------

the defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted the following interstate wire communication:  a wire transfer of funds totaling $301,024.50 from Argent in California to First American Title in Oklahoma.

All in violation of Title 18, United States Code, Section 1343; and Title 18, United States Code, Section 2(b).

## COUNT 11

**Engaging in a Monetary Transaction
in Criminally Derived Property;
<u>Aiding and Abetting</u>
(18 U.S.C. § 1957;
18 U.S.C. § 2(b))**

92.   On or about January 7, 2004, in the Western District of Oklahoma and elsewhere,

---------------------- **BRANDON L. BAUM, and
RUSTY REAL THERRIEN,** ---------------------

the defendants herein, knowingly engaged in and caused to be engaged in, a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000,00, that is, the deposit of Cashier's Check No. 070549956 from Commercial Federal in the amount of $11,000.00 payable to **"RUSTY THERRIEN"** into Account No. xxxx7852 at Arvest, such property having been derived from a specified unlawful activity, that is, wire fraud as described in Count 10, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957; and Title 18, United States Code, Section 2(b).

## COUNT 12

**Wire Fraud;**
**Aiding and Abetting**
**(18 U.S.C. § 1343;**
**18 U.S.C. § 2(b))**

### THE SCHEME TO DEFRAUD

93.  The Federal Grand Jury incorporates by reference paragraphs 1 through 4, 9, 12, 14, 17, and 21 through 30 of the Indictment.

94.  From in or about December 2004, and continuing through on or about January 18, 2005, **BRANDON L. BAUM, CHARLES E. CALDWELL, JR., GAYLE L. CALDWELL,** and others devised and intended to devise a scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises.  The purpose of the scheme was to assist F.B. in acquiring the property at 1709 Irvine Drive, Oak Tree Subdivision, Edmond, Oklahoma, at a fraudulently inflated value through false representations to Long Beach concerning her financial ability to qualify.  **BAUM, CHARLES E. CALDWELL, JR., GAYLE CALDWELL,** F.B., and others intended to personally profit from the sale.

It was part of the scheme that:

95.  On or about December 6, 2004, **BAUM** submitted a purchase contract on behalf of F.B. to the sellers' agent for 1709

Irvine Drive in the amount of $800,000.00, which was $250,000.00 above the MLS list price;

96.   On or about December 7, 2004, the sellers accepted an addendum to the purchase contract prepared by **BAUM** and presented to them by the sellers' agent in which the sellers agreed to pay a total of $220,000.00 at closing, including $132,000.00 for purported repairs;

97.   On or about December 6, 2004, F.B., with the assistance of a broker at United Lending, completed and thereafter submitted a false Uniform Residential Loan Application for a mortgage in the amount of $720,000.00 to Long Beach Mortgage that contained false information concerning the her income, bank balance, and source of down payment, which loan was subsequently approved;

98.   On or about December 10, 2004, the sellers' agent caused the MLS list price to be increased from $550,000.00 to $800,000.00;

99.   On or about January 11, 2005, at the direction of the sellers' agent, the sellers signed an invoice from a down payment assistance provider whereby the sellers agreed to pay $128,050.00 for a "marketing service fee";

100.  On or about January 11, 2005, at the direction of their agent, the sellers signed an invoice from "Access Marketing

- 29 -

Services," a business owned by **GAYLE CALDWELL**, whereby the sellers agreed to pay $10,000.00 for "marketing service";

101. On or about January 13, 2005, the down payment assistance provider purchased a cashier's check payable to Oklahoma City Abstract in the amount of $120,000.00, with F.B. as the remitter, to cover the majority of her down payment;

102. At the closing, on or about January 14, 2005, **BAUM** and the sellers' agent received real estate commissions of approximately $16,200.00 each and United Lending received a commission of approximately $32,690.00. **CHARLES E. CALDWELL, JR.** personally received a commission in the amount of $15,847.50 from United Lending;

103. On or about January 14, 2005, the down payment assistance provider received a check in the amount of $128,050.00 from Oklahoma City Abstract issued from the sales proceeds for a purported marketing service fee;

104. On or about January 14, 2005,      **GAYLE CALDWELL** received a check in the amount of $10,000.00 payable to her business, "Access Marketing Services," issued by Oklahoma City Abstract from the sales proceeds; and

105. On or about January 14, 2005, **BAUM** provided Oklahoma City Abstract with an invoice from Secorum falsely stating that $92,000.00 worth of repairs had been completed at 1709 Irvine Drive. **BAUM** received a check from Oklahoma City Abstract for

$92,000.00 from the sales proceeds payable to Secorum pursuant to the invoice.

106. On about January 14, 2005, in the Western District of Oklahoma,

----------------------- **BRANDON L. BAUM,**
　　　　　　　　　　　　　　**GAYLE L. CALDWELL, and**
　　　　　　　　　　　　　　**CHARLES E. CALDWELL, JR.,** --------------

the defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted the following interstate wire communication:  a wire transfer of funds totaling $683,954.50 from Long Beach in California to Oklahoma City Abstract in Oklahoma.

All in violation of Title 18, United States Code, Section 1343; and Title 18, United States Code, Section 2(b).

### COUNT 13

**Engaging in a Monetary Transaction
in Criminally Derived Property;
Aiding and Abetting
(18 U.S.C. § 1957;
18 U.S.C. § 2(b))**

107. On or about January 14, 2005, in the Western District of Oklahoma and elsewhere,

- 31 -

----------------------- **BRANDON L. BAUM,** -----------------------

the defendant herein, knowingly engaged in and caused to be engaged

in, a monetary transaction by, through, or to a financial institu-

tion, affecting interstate commerce, in criminally derived property

of a value greater than $10,000,00, that is, the transfer of

Cashier's Check No. 1-40717 in the amount of $92,000.00 from SNB

payable to Secorum Investments by endorsing it and delivering it to

F.B., such property having been derived from a specified unlawful

activity, that is, wire fraud as described in Count 12, in

violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section

1957; and Title 18, United States Code, Section 2(b).

## COUNT 14

### Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(1)(B)(i))

108. On or about January 15, 2005, in the Western

District of Oklahoma and elsewhere,

----------------------- **GAYLE L. CALDWELL,** -----------------------

the defendant herein, did knowingly conduct and attempt to conduct

a financial transaction affecting interstate and foreign commerce,

that is, the transfer of funds by means of a check in the amount of

$4,500.00 on Access Marketing Service, Inc.'s account #xxxxxx8119

at First Fidelity Bank payable to Charles Caldwell for a "referral fee," which involved the proceeds of a specified unlawful activity, that is, wire fraud as described in Count 12 in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole or in part to conceal and disguise the source, ownership and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, defendant knew the property involved in the financial transaction represented the proceeds of some form of an unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

JOHN C. RICHTER
United States Attorney

SUSAN DICKERSON COX
Assistant U.S. Attorney